ELISEO MANGUAL ET AL., ETC., Plaintiffs and Appellees, *v.* METRO GOLDWYN MAYER OF PUERTO RICO ET AL., Defendants and Appellees; GREAT AMERICAN INDEMNITY Co., Third-party Defendant and Appellant.

No. 469.     Decided February 11, 1964.

*Rivera Zayas, Rivera Cestero & Rúa,* and *Aldo Segurola de Diego* for appellant. *Beverley, Castro & Rodríguez Lebrón* for Metro Goldwyn Mayer.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

PER CURIAM: Eliseo Mangual and his wife, Lydia Villafañe, their daughters Hilda, Rita, and Diana, represented by the aforementioned parents, filed a complaint for damages against Metro Goldwyn Mayer of Puerto Rico, owner and operator of Metro Theater in Santurce and, also, against its employees German Oppenheimer, manager, and Basilio Santana, usher, on the basis of the facts occurring in said theater during the exhibition of a show on February 16, 1957.

Defendant answered the complaint admitting certain facts and denying others, and filed a third-party complaint against its insurer, Great American Indemnity Co. Said insurance company also answered the third-party complaint admitting some facts, but denying its liability for the facts alleged in the original complaint.

On March 31, 1958 a stipulation agreed upon by defendant and Great American Indemnity Co. was filed in the trial court in which, in part, the following was stipulated:

"2. Great American Indemnity Co. understands that the hazards alleged in the complaint, if true, which is denied, would not be covered by said policy, while Metro Goldwyn Mayer of Puerto Rico understands, to the contrary, that said hazards would certainly be covered."

The case was tried, and on February 17, 1961, judgment was rendered ordering Metro Goldwyn Mayer of Puerto Rico, the Great American Indemnity Co., and Basilio Santana to pay to plaintiffs the following amounts which we consider quite modest:

"To Eliseo Mangual and his wife Hilda (*sic*) Villafañe the amount of $1,500 for physical damages, sufferings and mental anguish.

"To Hilda, Rita, and Diana Mangual Villafañe for sufferings and mental anguish, $500 each.

"The complaint is dismissed as to codefendants Harry Bryman and German Oppenheimer.

"Defendants are ordered to pay to plaintiffs costs and $500 for attorney's fees."

The facts which the trial court found proved were the following:

"Plaintiff Eliseo Mangual, accompanied by his wife Lydia Villafañe and their minor daughters Hilda, Rita, and Diana, attended, on Saturday, February 16, 1957, the exhibition of a motion picture in Metro Theater operated by defendant Metro Goldwyn Mayer of Puerto Rico, upon payment of the corresponding admission tickets. They sat in the center section to the front of the theater in the seventh row counting from the stage. Metro Theater has 38 rows of seats.

"A few minutes after occupying their seats the usher of the theater asked plaintiff to leave the theater and when the latter asked him to call the manager because he would not move from the place, the usher returned with the assistant manager and again asked plaintiff to leave the theater. Plaintiff then went to the lobby of the theater with his wife and daughters, where several persons gathered as a result of the incident.

"The usher first and then accompanied by the assistant manager, asked plaintiff to leave the theater because the usher had received a complaint from some young ladies that plaintiff had laid his hands on them.

"When plaintiff was leaving the theater he asked for the young ladies who had accused him and they did not appear thereabout. The assistant manager did not see them either that afternoon.

"Plaintiff decided to leave the theater with his family and they returned to him the money he had paid for the tickets.

"Plaintiff was identified by the young ladies to the usher from the entrance door, in the semidarkness of the theater to the place occupied by plaintiff and his family, which was about 30 rows away from them.

"All the circumstances tend to show that an error was committed by the usher in the identification and he addressed plaintiff mistaking him with another person. It is very difficult to believe that a person of plaintiff's social status, accompanied by his wife and three daughters, 15, 14 and 13 years old, would perform the actions charged against him.

"The attitude and conduct of defendant's employees produced a nervous condition on plaintiff's wife which required treatment by a physician and plaintiff and his minor daughters felt the suffering and mental anguish that such circumstances naturally produce.

"Defendant's employees intervened with plaintiff, whom they did not know, disturbing his peace and tranquility by charging him, mistakenly, with the offense of assault and battery.

"Defendant's employees did not act arbitrarily in intervening with plaintiff; they received the complaint, but they went erroneously to plaintiff when he was pointed out by the young ladies from the entrance of the hall inside while the movie was being exhibited and plaintiff was occupying a seat in the seventh row in the front part of the theater."

Against the decision, the third-party defendant Great American Indemnity Co. filed a petition for review. It maintains that the trial court erred (1) in ordering it to pay to plaintiffs the amounts stated in the judgment because the insurance policy issued by it did not cover the hazards described in the judgment nor the damages granted for slander; (2) in not admitting certain evidence tending to show the intent of the parties in respect to the coverage of the insurance policy and, (3) in ordering to pay the amount of $500 to each of Mangual's daughters on the basis that the slanderous charges were not directed to the daughters.

■ In our judgment, none of said errors was committed. The examination of the policy, the general and current meaning of the words and terms used in the same, the cases cited by the trial court itself, and that contained in the memorandum of the Metro Goldwyn Mayer of Puerto Rico, have convinced us that the facts alleged in the complaint and

proved by the evidence introduced, constitute hazards covered by the policy issued by the Great American Indemnity Co.

■ The trial court did not err either in refusing to admit the evidence offered by appellant to show the intention of the parties in respect to the scope of coverage of the insurance policy. The evidence not admitted by the trial court was one tending to show that a few months after the complaint in this case was filed and over a year after the occurrence of the incident, the insurance company, pursuant to the restrictive interpretation which it gave to the policy in the sense that it did not cover the hazard herein involved,[1] offered Metro an additional coverage upon payment of premium to cover in the future the legal liability of Metro in cases of slander and libel. The insurer sought to introduce said evidence to show that the hazard involved herein was not covered by the policy. The evidence proposed is clearly inadmissible for the reasons previously stated.

■ The modest compensation granted to each one of the plaintiff spouses' daughters was proper considering the reality of the sufferings of each one of them as a result of what occurred to their parents. To reach this conclusion it suffices to read plaintiff Mangual's testimony at the trial.

The judgment appealed from will be affirmed.

---

[1] By virtue of the policy of public liability in favor of Metro Goldwyn Mayer of Puerto Rico binding itself to pay for the latter "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined." The definition of the hazards in the policy is as follows:

"Definition of Hazards—Division 1.—Premises—Operations. The ownership, maintenance or use of the premises (Teatro Metro) and all operations necessary or incidental thereto."

Through Dr. José E. Polanco's testimony (Tr. Ev. 7–54), the damages caused to plaintiff's health and his wife's as a result of the treatment suffered in Metro Theater were shown.